## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY B., through his
Parents, THOMAS B. and MARIA B.,
of Plymouth Meeting, PA 19462,             :

    AND                                     :

and THOMAS B. and MARIA B., adults,        :
individually, and on their own behalf,      :    Civil Action

    Plaintiffs                              :
      v.                                    :    No.

COLONIAL SCHOOL DISTRICT                    :
230 Flourtown Road,                         :
Plymouth Meeting, PA 19462                  :

    Defendant                               :

## COMPLAINT

### I.   Preliminary Statement

1.    This action is brought by Anthony B., a minor child with disabilities, and his parents, Thomas B. and Maria B. (collectively referred to as "Plaintiffs" or the "Family"), against Colonial School District ("Defendant" or the "District"), under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., and its federal and state implementing regulations; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, and its federal and state implementing regulations; and Chapters 14 and 15 of the Pennsylvania Code.

2.    In August of 2019, the Family filed a Special Education Due Process complaint against the District for its failure to offer Anthony a free and appropriate public education ("FAPE"). The complaint sought tuition reimbursement for Anthony's placement at AIM Academy ("AIM"), a licensed private school for students with language-based learning disabilities

such as Anthony's in Conshohocken, Pennsylvania, for the 2017-2018 (tenth-grade), 2018-2019 (eleventh-grade), and subsequent school years, and related expenses.

3.          Following an evidentiary hearing, the presiding Hearing Officer in a written Decision denied relief to the Family, basing his Decision on the narrowest of legal grounds. Under the relevant three-pronged legal test, he found, first, that the District had indeed failed to timely identify Anthony as a child with disabilities and offer an IEP -- and that even when it did, the IEP it finally offered was inappropriate. He also found that the equities did not weigh in favor of denying or reducing the District's payment of AIM tuition.

4.          However, although the Family *had* presented at the hearing hearsay evidence that Anthony's placement at AIM was appropriate, and although it was corroborated by other competent evidence to the effect – and although the District had presented *no* evidence that AIM was inappropriate, and had *not* objected to the hearsay – the Hearing Officer nonetheless found the Family had not carried its burden of showing that AIM was appropriate. He even found the Family had presented "no evidence" on this point. Although there has never before been a requirement that a representative from such a private school testify, and although under the broadened standards of evidence followed at such administrative hearings, such corroborated and non-objected-to hearsay must be received and afforded its natural probative value, the Hearing Officer stated that because no witness from AIM had appeared to testify, and because the evidence of the appropriateness of the programming at AIM was hearsay, the Family had not carried its burden of showing AIM's appropriateness by a preponderance of the evidence. He further wrongly and inexplicably found that the Family's educational psychologist had no experience with school psychology or education, which the testimony shows is entirely contradicted by the testimonial

2

and documentary record, and gave his testimony and two reports such "little weight" that he referred to it as "no evidence" because he was not a certified school psychologist.

5.     The narrow legal issue presented to this Court is therefore whether the Special Education Due Process Hearing Officer erred in denying tuition reimbursement when he erroneously found the Family had failed to present any evidence on the appropriateness of Anthony B's placement at AIM, where the Family had actually presented substantial and uncontradicted evidence. He did this by announcing new expert witness requirements for such evidence, and by ignoring settled requirements.

6.     Contrary to settled law concerning evidence in administrative hearings, the Hearing Officer rejected unrebutted hearsay evidence, to which an objection was never lodged, on the appropriateness of Anthony B.'s placement at AIM – an uncontested point that was corroborated by consistent testimony and exhibits received at the administrative hearing, setting new requirements and a higher burden for the presentation of such evidence than has ever applied. That evidence should have been accorded its natural probative value, under well-settled and binding precedent – and, since it was unrebutted and uncontested, fully sufficed under established law.

7.     The Hearing Officer not only improperly rejected this corroborated evidence but also placed a new, unique, unannounced, and grossly unfair surprise burden on the Family, that has never before applied, for two key witnesses. He ruled that, in order to show that a private school for children with disabilities is appropriate, a family must present (1) the testimony of someone who works at that private school, even where such testimony was unavailable, for a due process hearing, and (2) must use as an evaluator, and present the testimony of, only a certified school psychologist – not a Ph.D. psychoeducational psychologist with decades of experience and

with an impressive depth of practice in evaluations for children with learning disabilities, who also has an additional master's degree in special education, and who visited and observed Anthony at AIM and testified about the appropriateness of AIM's program.

8.      Anthony is currently in twelfth grade at AIM.  From his sixth- through eighth-grade school years (2013-2014 to 2015-2016), Anthony was enrolled and attended school in the District. While a student in the District, Anthony was not identified as a student with a disability.  However, he had tremendous and increasing difficulty with schoolwork, especially reading; he had obvious attention and hyperactivity issues; he earned only consistently low, almost-failing grades despite much persistent effort on his own, his parents' and his tutor's part; and, thinking of himself as stupid, he became quiet, withdrawn, and anxious.

9.      Upon the Parents' request, the District evaluated Anthony in December of 2015, during his eighth-grade school year. However, it found him ineligible for special education programming. That summer, in July-August of 2016, the Family obtained a private psychoeducational evaluation, which for the first time diagnosed Anthony with a Specific Learning Disorder ("SLD") with impairment in reading (comprehension and fluency), Attention Deficit Hyperactivity Disorder ("ADHD"), and Persistent Depressive Disorder. The Family gave it to the District as soon as they received it in late August, but the District refused to recognize Anthony as a child with a disability. It only offered to add regular education reading support, plus some co-taught classes, to a proposed regular education program for him. It did not offer to re-evaluate him.

10.      Because the District's program was not meeting Anthony's educational needs, the Family enrolled Anthony at AIM, which was fully appropriate for him and met his educational

4

needs, starting in his ninth-grade year (2016-2017).

11.     The Family was still interested in an appropriate public-school placement for him, and Anthony remained friends with his public-school classmates.  Therefore, the Family shared the psychoeducational evaluation with the District, met with the District to review it, and continued seeking appropriate educational programming from the District.  Incredibly, the District still refused to identify Anthony as a child with a disability, even after Parents' repeated entreaties. Thus, as the Parents notified the District, they had no other option but to continue his enrollment at AIM, at which he was thriving, for his tenth and then eleventh-grade years.

12.     In the fall of 2018, Anthony's eleventh-grade year, the District finally agreed to re-evaluate Anthony for special education. In this Evaluation Report ("ER"), in October 2018, the District reversed course and *now* finally agreed with the 2016 private evaluation, finding that Anthony in fact did have a SLD (reading comprehension and fluency) after all.  But although the new ER identified Anthony as a student eligible for special education, it failed to include his secondary identification, Other Health Impairment ("OHI"), for Anthony's ADHD and depression – thus refusing to take into account or even recognize those important aspects of these overlaying disabilities to determine his educational programming. The District offered the family a Notice of Recommended Educational Placement ("NOREP") and a proposed Individualized Educational Program ("IEP") based on this inadequate ER, which the Family did not approve.

13.     Thus, unfortunately, despite Anthony's ongoing struggles, the District failed to timely and appropriately assess and address Anthony's needs, and it did not develop an appropriate educational program to support those unique needs and enable him to make meaningful educational progress.  The Family again had no option but to continue Anthony's placement at

AIM.

14.     The Family therefore filed the Due Process complaint to obtain tuition reimbursement, an equitable remedy available under IDEA and Section 504, and related expenses. It is from the administrative decision denying relief in an unprecedented fashion that this appeal is taken.

15.     The Decision was thus erroneous.  It violated settled evidentiary law applicable in administrative proceedings on the weight of unobjected-to, corroborated hearsay, which must be given its natural probative value, and it placed a new, surprise burden on the Family, both retrospectively and unfairly.

16.     This Court is required to undertake an independent review of the record and the Decision of the Hearing Officer.  Rowley v. Board of Educ., 458 U.S. 176, 206-07 (1982); Susan N. v. Wilson School Dist., 70 F.3d 751, 759 (3d Cir. 1995).

17.     After fully considering the entire record, this Court should reverse the Hearing Officer's Decision, accept additional evidence upon the request of a party, find AIM appropriate based on the complete record, and award appropriate relief to the Family for the District's educational failures, i.e., tuition reimbursement for Anthony's 2017-2018, 2018-2019, and 2019-2020 school years at AIM, and related costs; and reasonable attorneys' fees and costs.

**II.     Parties**

18.     Anthony was born in 2001, and, at all relevant times to this action, has resided in Plymouth Meeting, Pennsylvania, within the geographical boundaries of the District.  Anthony is a student with disabilities as defined under IDEA, and a Protected Handicapped Student under Section 504.

19.     Thomas B. and Maria B. are Anthony's parents.  At all times relevant to this action, Anthony has resided primarily with Maria B. in Plymouth Meeting, Pennsylvania, within the geographical boundaries of the District.  Thomas B., who has partial custody, lives in Lafayette Hill, Pennsylvania, also within the geographical boundaries of the District.

20.     The District is located at 230 Flourtown Road, Plymouth Meeting, Pennsylvania. The District is the recipient of several sources of federal funds and is an educational agency designated by Pennsylvania law and the Pennsylvania Department of Education for the provision of educational services to individuals residing within its boundaries; such services include those mandated under IDEA as well as Pennsylvania's statutory/regulatory scheme concerning young children with disabilities.  11 P.S. § 875-101; 22 Pa. Code §§ 14.131 - 14.133; see also, e.g., 24 P.S. Chapter 13; and 22 Pa. Code Chapters 14 and 15.

## III.    Jurisdiction and Venue

21.     This Court has original jurisdiction over this appeal pursuant to 28 U.S.C. § 1331 because this case raises federal questions under the IDEA and Section 504.

22.     Plaintiffs have exhausted their administrative remedies where required under 20 U.S.C. § 1415(i), having timely pursued a Special Education Due Process hearing.

23.     Plaintiffs' claims and remedies are authorized by 20 U.S.C. § 1415, and 28 U.S.C. §§ 2201 and 2202, providing for declaratory and any further relief deemed necessary and proper.

24.     All of the Defendant's actions have taken place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania.  Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

IV.     **Additional Facts Supporting Liability**

25.     Anthony is an 18-year-old, twelfth-grade student who currently attends AIM, a private licensed academic school for children with language-based learning disabilities in Conshohocken, Pennsylvania.

26.     Anthony's early education was in parochial school. Until second grade, his development appeared unremarkable. However, by third grade, he began to experience difficulty reading and with organization.  He eventually fell behind his peers.

27.     In fifth grade, he switched to a different parochial school, Holy Rosary.  It provided support and assistance to him through the Montgomery County Intermediate Unit ("IU"), as well as through his teachers outside of class, and his Mother engaged a private tutor, but Anthony continued to struggle with his homework and organizational skills.  By mid-November of his sixth-grade year (2013-2014), it was clear to his Parents that he needed more assistance than the parochial school could provide.  Therefore, they enrolled him in the District, noting on the enrollment forms that the IU had assisted him while he was in parochial school.

28.     Anthony attended school in the District at Colonial Middle School from sixth to eighth grades, in the 2013-2014 to the 2015-2016 school years.  During this time, due to his disabilities, Anthony's grades were consistently low, even with much extra work and time with a private tutor, his parents at their homes, and after-class homework support at school.  Further, he became more and more withdrawn and quiet, his confidence about his intelligence and ability in school was low and continued to decrease, and his anxiety level about school, already very high, only increased.

29.     In November of 2015, when Anthony was in eighth grade, Maria B. requested an

evaluation from the District, stating that she was "concerned he may have a learning deficit" and that she was "worried that Anthony was becoming depressed over his difficulties completing his school work and passing his classes."

30.     In the District's December 2015 Evaluation Report ("ER"), Anthony's eighth-grade reading teacher noted that his testing showed that he was reading on a fifth-grade level and "struggles to use his reading skills and strategies when given a text above his reading ability." His English teacher noted, among other concerns, that Anthony often needed directions repeated or reworded, that he "tends to drift and requires prompting to remain on task", and that "his lack of affect is of concern; he appears to be despondent." Despite Anthony's history of clear, consistent, and debilitating academic and emotional struggles, and in disregard of its own teachers' comments, the District failed to identify Anthony as a student eligible for special education at that time.

31.     In light of Anthony's continuing struggles at school, and the School District's failure to appropriately identify Anthony's needs in eighth grade, in the summer of 2016, Parents eventually decided to obtain an independent psychoeducational evaluation from Richard J. Reisboard, Ph.D.  As he testified, Dr. Reisboard has both a Bachelor's Degree and a Ph.D. in psychology, and a Master's Degree in Special Education.  He taught in the Philadelphia public schools; had a dual appointment in educational psychology and psychology at Temple University in which, for ten years, he ran its Reading Clinic, supervising the psychoeducational evaluation of thousands of children for learning disabilities, primarily in reading, which evaluations were to be used in schools; and opened his private educational psychology practice on the Main Line 39 years ago.  N.T. 141-142.

32.    Dr. Reisboard's evaluation was comprehensive and thorough.  He assessed all areas of suspected need, including cognition, language, attention and executive functioning, perceptual and motor abilities, memory and learning, academic achievement, and social and emotional functioning.

33.    Dr. Reisboard identified Anthony as a child with a SLD in reading, ADHD, and Dysthymia, i.e., Persistent Depressive Disorder. He also noted weaknesses in Anthony's short-term memory, auditory memory, and working memory, as well as his negative self-image and poor self-confidence regarding academics. Dr. Reisboard's report included a variety of well-reasoned recommendations for specially designed instruction, accommodations, supports, and programming/placement that Anthony requires - and should have been provided all along - in order to make meaningful educational progress in school.

34.    Specifically, in addition to other recommendations, Dr. Reisboard recommended implementation of an individualized, highly significant and intensive reading support program offered on a daily basis, as well as an educational environment that thoroughly and consistently integrated responses to Anthony's literacy needs within the academic curriculum.

35.    Although the District received a copy of Dr. Reisboard's report and reviewed it at a meeting with the Parents, the District again refused to identify Anthony as a child with a disability and instead merely offered a reading support class in his regular education program. Despite the Parents' repeated pleas for Anthony to receive special education programming, the District declined, stating that Anthony did not meet the criteria.

36.    However, Anthony's historic testing results and Dr. Reisboard's 2016 evaluation, combined with Anthony's long history of academic performance and emotional struggles, all

established that his functioning levels and needs were far more complex than the School

District's 2015 evaluation indicated. In fact, its later 2018 evaluation essentially admitted as

much, in its delayed acknowledgement of Anthony's disabilities. Because of its inappropriate

2015 evaluation, the School District did not timely identify Anthony as eligible for special

education, continued to propose programs that were inappropriate for him, and failed to meet all

of Anthony's educational needs to enable Anthony to make meaningful educational progress

consistent with his clear abilities.

       37.     The parents thus had no choice but to continue Anthony at AIM for his tenth-

grade year, 2017-2018.

       38.     In the fall of 2018, Anthony's 11th grade year, the School District agreed to re-

evaluate Anthony for Special Education. Although it finally found Anthony eligible for services

as a student with a SLD in reading, that Evaluation Report ("ER"), dated October 12, 2018, was

neither sufficient nor comprehensive in scope. The 2018 ER again failed to fully identify

Anthony's total needs, specifically those relating to his diagnoses of ADHD and depression.

Thus, the Family again re-enrolled Anthony at AIM, where he has continued to thrive.

       39.     Anthony is currently in the twelfth grade at AIM and is making fully appropriate

educational progress. In the fall of 2019, Dr. Reisboard privately re-evaluated Anthony, visiting

and observing at AIM, and interviewing his teachers. His 2019 report, which refers to this visit,

showed clearly that AIM is an appropriate placement for Anthony – which is even more apparent

when considered along with his 2016 report and his testimony. The testimony of Anthony's

mother, Maria B., and the extensive packet of reports from AIM, further established – without

contradiction – that AIM is an appropriate placement. The Hearing Officer should have awarded

tuition reimbursement.

**V.**   **Legal Authority**

<u>IDEA, Section 504, and Tuition Reimbursement</u>

40.     The purpose of the IDEA is to ensure that "all children with disabilities have

available to them a free and appropriate public education ["FAPE"] that emphasizes special

education and related services designed to meet their unique needs and prepare them for further

education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). IDEA and the

regulations thereunder, 34 C.F.R. §§ 300.100 <u>et seq.</u>, and 22 Pa. Code Chapter 14, require that

public School Districts provide disabled children with a FAPE, as well as extensive Due Process

procedures to effectuate that right.

> "The IDEA protects the rights of disabled children by mandating that public
> educational institutions identify and effectively educate those children, or pay for
> their education elsewhere if they require specialized services that the public
> institution cannot provide." <u>P.P. v. West Chester Area School Dist.</u>, 585 F.3d 727,
> 735 (3d Cir. 2009). Accordingly, schools must: (1) identify children in need of
> special education services (Child Find); and (2) provide a FAPE to disabled
> students.

<u>D.K. v. Abington Sch Dist.</u>, 696 F.3d 233, 244 (3d. Cir. 2012).

41.     The requirement that School Districts properly identify all eligible children is

known as "Child Find" and is mandated under both IDEA and Section 504. 34 C.F.R. §§ 104.33

and 300.111; 20 U.S.C § 1412(a)(3)(A) and (B). <u>See</u> <u>PARC v. Cmwlth.</u>, 343 F.Supp. 279 (E.D.

Pa. 1972).

42.     Under these statutes and their regulations, School Districts have a continuing

obligation to properly evaluate and accurately identify all students who are reasonably suspected

of having a disability. <u>Ridley Sch. Dist. v. M.R.</u>, 680 F.3d 260 (3d Cir. 2012) (citing <u>P.P v. West</u>

Chester Sch. Dist., supra); Punxsutawney Area School District v. Kanouff, 633 A.2d 831 (Pa. Cmwlth. 1995); Ridgewood Board of Education v. N.E., 172 F.3d 238 (3d Cir. 1999); W.B. v. Matula, 67 F.3d 484 (3rd Cir. 1995); Palmyra Board of Education v. F.C., 2 F.Supp.2d 637 (D.N.J. 1998); T.B. v. School District of Philadelphia, 1997 WL 786448 (E.D.Pa. 1997). A district's Child Find obligations are triggered when there is a reason to suspect that the child may be disabled, and "a poorly designed and ineffective round of testing does not satisfy a school's Child Find obligation." D.K. v. Abington Sch Dist., 696 F.3d at 250 (citing G.D. ex rel. G.D. v. Wissahickon Sch. Dist., 832 F.Supp.2d 455, 465–67 (E.D.Pa. 2011) (finding the school's reevaluation of an elementary student with significant behavioral problems was inadequate because it overemphasized academic proficiency and assessed behavioral issues only cursorily)).

43.     A child who is suspected of having a qualifying disability must be identified and evaluated "within a reasonable time after school officials are on notice of behavior that is likely to indicate a disability." W.B. v. Matula, 67 F.3d 484, 501 (3d Cir.1995), abrogated on other grounds, A.W. v. Jersey City Pub. Schools, 486 F.3d 791 (3d Cir. 2007) (en banc).

44.     A school district has an obligation to reevaluate all children residing in the District – including students in private schools – suspected to be eligible under the IDEA and to develop an IEP when a parent either: (1) enrolls their eligible child in their district of residence after a period of absence; or (2) requests the District evaluate and/or offer the family a proposed IEP. L.T. v. North Penn School Dist., 2018 WL 6600206 (E.D. Pa. 2018); Shane T. v. Carbondale Area Sch. Dist., 2017 WL 4314555 (M.D. Pa.  2017); Moorestown Twp. Bd. of Educ. v. S.D., 811 F.Supp.2d 1057 (D.N.J. 2011) (citing 34 C.F.R.  300.536 (1999)). See also James v. Upper Arlington School District, 228 F.3d 764 (6th Cir. 2000).

45.     At the beginning of each school year, a school district is required to develop an IEP for every child with a disability who resides within its jurisdiction. 20 U.S.C. § 1414(d)(2)(A); L.T., 2018 WL 6600206 at *5. Because a school district's obligation to offer FAPE derives from the child's residency in the community, even disabled students in private schools must be offered an IEP, and enrollment is not required to trigger the mandatory obligation to provide an offer of FAPE. Shane T., 2017 WL 4314555 at *9. See also I.H. v. Cumberland Valley School Dist., 842 F. Supp.2d 762, 772-73 (E.D. Pa. 2012) ("requiring enrollment as a prerequisite to obtaining an IEP…would be at odds with the 'remedial nature' of the IDEA") (citing Forest Grove School Dist. v. T.A., 557 U.S. 230 (2009)); James v. Upper Arlington School District, 228 F.3d 764, 766 (6th Cir. 2000) (the "obligation to deal with a child in need of services, and to prepare an IEP, derives from residence in the district, not from enrollment"); Moorestown, 811 F. Supp 2d at 1077 (collecting cases).

46.     A resident child eligible for special education services is entitled to an offer of FAPE upon a parent's request. L.T., 2018 WL 6600206 at *7. If that resident child is attending a privately funded program, the child still has the right to an offer of a FAPE via a thorough evaluation and a proposed IEP. Shane T., 2017 WL 4314555 at *9.

47.     Moreover, "it is not the parent's obligation to clearly request an IEP or FAPE; instead it is the school's obligation to meet its Child Find duties and offer a FAPE unless the parent makes clear his or her intent to keep the student enrolled in the private school." Id.; Moorestown, 811 F.Supp.2d at 1066 (IDEA's Child Find provision requires that "public schools must do more than wait for an eligible disabled student to contact it."). See also Doe v. East Lyme Bd. of Educ., 2012 WL 4344304 at *17 (D. Conn. Aug. 14, 2012) (school district was not

relieved of obligation to offer a FAPE to a resident student who was attending private school on ground that student's mother did not "show an interest in returning to East Lyme schools"); Board of Educ. of Evanston-Skokie Comm. Consolidated School Dist. 65 v. Risen, 2013 WL 3224439 at *13 (N.D. Ill. June 25, 2013) ("The District does not cite any authority requiring that a parent specifically request an IEP.").

48. The United States Supreme Court has made clear that "when a child requires special-education services, a school district's failure to propose an IEP of any kind is at least as serious a violation of its responsibilities under [the] IDEA as a failure to provide an adequate IEP." Forest Grove School District v. T.A., 557 U.S. 230, 238-39 (2009). As such, under IDEA, parents who disagree with their child's program and placement at a school district may unilaterally enroll their child in an appropriate out-of-district placement and obtain tuition reimbursement where a court determines that the school district has not offered an appropriate education for the child. Shore Reg'l High School Bd. of Educ. v. P.S., 381 F.3d 194, 198-99 (3d Cir. 2004). The Supreme Court has unequivocally stated: "A reading of [IDEA] that *left parents without an adequate remedy* when a school district unreasonably failed to identify a child with disabilities would not comport with Congress' acknowledgment of the *paramount importance of properly identifying each child eligible for services*." Forest Grove School Dist. v. T.A., 557 U.S. 230, 245 (2009) (emphasis added).

49. Here, Anthony missed his friends in public school, he and his Parents remained interested in having him return to public school, and they therefore requested both an IEP and an appropriate evaluation. The IDEA and its implementing regulations, see 34 CFR §§ 300.301 - 300.310, require, among other things, that to be appropriate, an evaluation, including

reevaluations, must include a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information about the student, including information from the parents, and assess the child in *all* areas of suspected disability. 34 C.F.R. § 300.304. Moreover, an evaluation must be sufficient in its scope to identify the educational needs of a student, whether commonly linked to the student's disability category or not, including present educational levels and related developmental needs, and assist in determining what supports and modifications to the student's program are necessary. 34 C.F.R. §§ 300.304 and 300.305.

50.     The District's ERs plainly did not meet these standards.

51.     Under the IDEA, an "appropriate education" is a series of services described in an IEP that is reasonably calculated to afford meaningful educational progress. Ridgewood, supra. The fundamental purpose of the IDEA is to ensure that "all children with disabilities have available to them a free and appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400 (d)(1)(A).

52.     The IDEA provides that an IEP team, including school officials and the child's Parents, must develop an appropriate educational program and placement for each eligible child through an IEP. A two-pronged analysis applies in reviewing a School District's IEP development under the IDEA: (1) whether the District complied with the procedures set forth in the IDEA; and (2) whether the IEP developed through the IDEA's procedures is reasonably calculated to enable the child to receive *meaningful* educational benefit. Rowley, 458 U.S. at 206-7; Endrew F., 137 S. Ct. at 999; Shore Regional High School Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir. 2004); M.C. v. Central Regional School, 81 F.3d 389 (3d Cir. 1996);

Ridgewood, 72 F.3d at 247; Polk v. Central Susquehanna Intermediate Unit 16, 853 F.2d 171,

184 (3d Cir. 1988); Board of Education v. Diamond, 808 F.2d 987 (3d Cir. 1986); Lauren W. v.

DeFlaminis, 2005 WL 1353643, at *6 (E.D. Pa. June 1, 2005), aff'd, 480 F.3d 259 (3d Cir.

2007).

53.     The IEP is the cornerstone of the special education program for a student. Honig

v. Doe, 484 U.S. 305, 311 (1988); Ridgewood, 172 F.3d at 247; W.B. v. Matula, 67 F.3d 484,

492 (3d Cir. (1995), abrogated on other grounds, A.W. v. Jersey City Public Schools, 486 F.3d

791 (3rd Cir. 2007); Polk, 853 F.2d at 173.

54.     As the Supreme Court recently reiterated, "We declined to hold in Rowley, and

we do not hold today, that 'every handicapped child who is advancing from grade to grade … is

automatically receiving a [FAPE].'" Endrew F. v. Douglas County School District RE-1, 137 S.

Ct. 988, 1000, n.2 (2017) (quoting Rowley, 458 U.S. at 203, n. 25).

55.     It is the School District's ***non-delegable*** obligation to create an appropriate IEP.

M.C. v. Central Reg'l School Dist., 813 F.3d 389, 397 (3d Cir. 1996) ("[I]t is the responsibility

of the child's teachers, therapists, and administrators -- and of the multi-disciplinary team that

annually evaluates the student's progress -- to ascertain the child's educational needs, respond to

deficiencies, and place him or her accordingly."); Carlisle Area School Dist. v. Scott P., 62 F.3d

520, 533 (3d Cir. 1995); Fuhrmann v. East Hanover Bd. of Educ., 993 F.2d 1031, 1035 (3d Cir.

1993); P.S., 381 F.3d at 199; Draper v. Atlanta Indep. School System, 518 F.3d 1275, 1288 (11th

Cir. 2008); Jana K. v. Annville-Cleona School Dist., 39 F. Supp. 3d 584, 602 (M.D. Pa. 2014); P.

v. Newington Bd. of Educ., 512 F. Supp.2d 89, 111 (D. Conn. 2007).

56.     Although Anthony's parents were involved and actively attempted to get the

District to identify Anthony and offer him an appropriate program, even a parent's failure to participate in a meaningful manner in the IEP process will not excuse an inappropriate IEP. M.C., 81 F.3d at 397 ("[A] child's entitlement to special education should not depend upon the vigilance of the parents (who may not be sufficiently sophisticated to comprehend the problem)... Rather, it is the responsibility of the child's teachers, therapists, and administrators – and of the multi-disciplinary team that annually evaluates the student's progress – to ascertain the child's educational needs, respond to deficiencies, and place him or her accordingly"); Warren G. v. Cumberland Valley School Dist., 190 F.3d 80 (3d Cir. 1999); Susquenita School Dist. v. Raelee S., 96 F.3d 78 (3d Cir. 1996); Lague v. District of Columbia,  130 F. Supp.3d 305, 316 (D.D.C. 2015).

57.    It is abundantly well-settled that "education" extends beyond discrete academic skill, and includes the social, emotional, behavioral, and physical progress necessary to move the child toward meaningful independence and self-sufficiency consistent with the child's cognitive potential. M.C. v. Central Regional School Dist., 81 F.3d 389, 393-394 (3d Cir. 1996); Polk, 853 F.2d at 181-182; Kruelle v. New Castle County School Dist., 642 F.2d 687, 693 (3d Cir. 1981). Thus, for an IEP to be appropriate, it must offer a child the opportunity to make meaningful progress in *all* relevant domains under the IDEA, including behavioral, social, and emotional. M.C., 81 F.3d at 394; Ridgewood, 172 F.3d at 247.  In addition, an IEP must be reasonably calculated "to enable the child to receive meaningful educational benefits in *light of the student's intellectual potential*." G.D. v. Wissahickon School Dist., 832 F. Supp.2d 455, 465 (E.D. Pa. 2011) (citing P.P. v. West Chester Area School Dist., 585 F.3d 727, 729-30 (3d Cir.2009)).  See also Polk, 853 F.2d at 182, 184 (3d Cir.1988) (IDEA requires that an IEP provide "significant

learning" and "meaningful benefit").

58.     The United States Supreme Court in its recent decision in Endrew F. v. Douglas County School District RE-1, 137 S. Ct. 988 (2017), emphasized that IDEA requires more than a program reasonably calculated to allow a student to make "*some* progress." Id. at 997, 1000-01 (emphasis added).   Instead, IDEA "requires an educational program reasonably calculated to enable a child to make progress *appropriate in light of the child's circumstances*." Id. at 999 (emphasis added).  This clearly requires that a child's progress must be assessed with consideration of the child's educational *potential*, see Polk, 853 F.2d at 182; Endrew F., 137 S. Ct. at 999, and that an "educational program must be appropriately ambitious in light of his circumstances," as minimal "progress from year to year can hardly be said to have been offered an education at all. The goals may differ, but every child should have the chance to meet challenging objectives." Id. at 1000 (emphasis added).  The progress standard set forth in Endrew F. is therefore entirely consistent with, and expands upon, the standard that has been applied for many years in this Circuit, requiring that a student must receive a program that is reasonably designed to allow a student to make *meaningful* educational progress and achieve "significant learning." Brandywine Heights Area School Dist. v. B.M., 248 F. Supp.3d 618, 632 (E.D. Pa. March 29, 2017) (citing Endrew F.; L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 390 (3d Cir. 2006)).

59.     The Supreme Court has clearly established that when a school district's IEP is inappropriate, and when the parents obtain and pay for an appropriate private program, along with other equitable considerations, the school district must fund the private program provided by the child's parents.  School Comm. of Burlington v. Dept. of Educ. of Massachusetts, 471 U.S. 359, 370-371 (1985); Florence County School Dist. Four v. Carter, 510 U.S. 7, 14 (1993).

See also 34 C.F.R. § 300.148(c). As such, under IDEA, parents who disagree with their child's

program and placement at a school district may unilaterally enroll their child in an appropriate

out-of-district placement and obtain tuition reimbursement where it has been determined that the

school district has not offered an appropriate education for the child. Shore Reg'l High School

Bd. of Educ. v. P.S., 381 F.3d 194, 198-99 (3d Cir. 2004).

Review of Educational Due Process Hearing Officer Decisions

60.     Courts afford far less deference to state hearing officers' decisions in the context

of IDEA than in other administrative proceedings, as IDEA requires federal courts to

independently review the record and make its own independent determinations, while accepting

additional evidence if necessary. See Reid ex rel. Reid v. District of Columbia, 401 F.3d 516,

521 (D.C. Cir. 2005) ("judicial review under IDEA is more rigorous than in typical agency

cases," explaining specifics); Shane T. v. Carbondale Area School Dist., 2017 WL 4314555, *7-

8 (M.D. Pa. 2017) (in IDEA review of hearing officer decisions, district court shall hear

additional evidence, must make its own findings by a preponderance of the evidence, and must

apply a nontraditional appellate standard of review, under which it does not utilize the normal

summary judgment standard but instead exercises plenary review of legal issues while only

initially presuming correctness of the credibility-based factual determinations of the hearing

officer, giving them due weight, but if non-testimonial, extrinsic evidence in the record would

justify a different conclusion and shows the factual determination is clearly erroneous – i.e., the

usual appellate review standard – or if the record read in its entirety compels a contrary

conclusion, then the district court should reach its own conclusions and need only explain why)

(quoting, citing and discussing, inter alia, Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 241 (3d

Cir. 2009); L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006); Shore Reg'l High

Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004); and Carlisle Area Sch. v. Scott P.,

62 F.3d 520, 528 (3d Cir. 1995)) (quotation marks omitted).[1]

      61.    Where, as here, the hearing officer's conclusion is inconsistent with IDEA's legal

mandates, and is directly contrary in important respects to the documentary record and any

additional evidence that may be received by the Court, it deserves little or no deference by this

Court, and the federal courts in this Circuit have not hesitated to overturn poorly supported

administrative findings.  Ferren C. v. Sch. Dist. of Philadelphia, 612 F.3d 712 (3d Cir. 2010)

(affirming district court's reversal of Hearing Officer's decision, and ordering school district to

issue student an IEP and serve as her LEA during three years of compensatory education after

weighing a number of equitable factors); M.C. on Behalf of J.C. v. Cent. Reg'l Sch. Dist., 81

F.3d 389 (3d Cir. 1996) (affirming the district court's conclusion that ALJ applied the wrong

legal standard in finding the school district provided student with a FAPE, but reversing the

district dourt's denial of compensatory education after finding it applied an incorrect standard

when deciding whether to grant compensatory education); Oberti by Oberti v. Bd. of Educ. of

Borough of Clementon Sch. Dist., 995 F.2d 1204 (3d Cir. 1993) (affirming district court's

reversal of ALJ's decision on the grounds that the school district failed to satisfy IDEA's least

restrictive environment requirement); M.Z. ex rel. D.Z v. Bethlehem Area Sch. Dist., 521 Fed.

Appx. 74 (3d Cir. 2013) (not precedential) (affirming district court's order that school district

---

[1] And, as the United States Supreme Court has recognized, even the more deferential "clearly
erroneous" standard of review "does not inhibit an appellate court's power to correct ... a finding
of fact that is predicated on a misunderstanding of the governing rule of law."  Bose Corp. v.
Consumers Union of United States, Inc., 466 U.S. 485, 501 (1984).

provide student with a publicly funded IEE, and finding Hearing Officer erred in declining to

order it despite finding school district's progress report inadequate); D.B. v. Gloucester Twp.

Sch. Dist., 489 Fed. Appx. 564 (3d Cir. 2012) (not precedential) (affirming district court's

vacating ALJ's decision and ordering school district to provide student with a new IEP, after

finding that student's IEPs for previous school years were predetermined and parents were

excluded from meaningful participation); Shane T. by & through Cathy K. v. Carbondale Area

Sch. Dist., 2017 WL 4314555 (M.D. Pa. Sept. 27, 2017) (not precedential) (Hearing Officer

erred in concluding school district not obligated to provide student FAPE after finding nothing

"clear" in the record indicating student would not have attended district even if a FAPE was

offered); Nicholas H. through Jeffrey H. v. Norristown Area Sch. Dist. of Norristown, PA, 2017

WL 569519 (E.D. Pa. Feb. 13, 2017) (not precedential) (granting tuition reimbursement for one

of the two years in which the Hearing Officer denied it after determining that that year's IEP was

insufficient to provide student with a FAPE); Buckley v. State Corr. Inst.-Pine Grove, 98 F.

Supp. 3d 704 (M.D. Pa. April 13, 2015) (reversing Hearing Officer's ruling that prison did not

violate the IDEA after determining that prison failed to "modify" prisoner's IEP but instead

effectively nullified it, thus failing to provide him with FAPE); A.W. ex rel. H.W. v. Middletown

Area Sch. Dist., 2015 WL 390864 (M.D. Pa. Jan. 28, 2015) (not precedential) (reversing part of a

Hearing Officer's decision in favor of the school district after determining that the district

violated its child find obligations by unreasonably delaying its evaluation process, thereby

denying him a FAPE); F.D. v. Holland Twp. Bd. of Educ., 2007 WL 2021782 (D.N.J. July 9,

2007) (not precedential) (reversing ALJ's denial of tuition reimbursement after determining

parents did not fail to satisfy New Jersey's notice requirements and that student's private

placement was appropriate); <u>D.H. v. Manheim Twp. Sch. Dist.</u>, 2005 WL 8177287 (E.D. Pa.

Nov. 29, 2005) (not precedential) (reversing in part Appeal Panel's ruling denying student tuition

reimbursement for a particular school year after determining that the student's IEP for that year

was inadequate because it failed to recognize the student's needs resulting from his SLD in

math); <u>D.E.R. v. Bd. of Educ. of Borough of Ramsey</u>, 2005 WL 1177944 (D.N.J. May 18, 2005)

(not precedential) (reversing OAL decision after finding district failed to satisfy LRE

requirements, that student's IEP failed to establish measurable goals and objectives, and that

school district failed to show social skills program was appropriate for the student); <u>P.N. v.</u>

<u>Greco</u>, 282 F. Supp. 2d 221, 236 (D.N.J. Sept. 23, 2003) (reversing ALJ's denial of

compensatory education after determining ALJ had jurisdiction over parents' claims against

student's former placement despite that placement being a private school); <u>W. Chester Area Sch.</u>

<u>Dist. v. Bruce C.</u>, 194 F. Supp. 2d 417 (E.D. Pa. March 8, 2002) (Appeals Panel erred as a matter

of law in determining student not entitled to an IEP because it failed to consider student's

potential in conjunction with his grades); <u>Rairdan M., By & Through Kerry M. v. Solanco Sch.</u>

<u>Dist.</u>, 1998 WL 401637 (E.D. Pa. July 13, 1998) (not precedential) (granting tuition

reimbursement after finding Appeals Panel impermissibly relied on student's lack of progress at

private placement when finding private placement inappropriate); <u>Rose v. Chester Cty.</u>

<u>Intermediate Unit</u>, 1996 WL 238699 (E.D. Pa. May 7, 1996) (not precedential), <u>aff'd</u> <u>sub</u>

<u>nom.</u> <u>Rose by Rose v. Chester Cty. Intermediate Unit</u>, 114 F.3d 1173 (3d Cir. 1997) (table)

(granting tuition reimbursement after concluding that Appeals Panel erred in its interpretation of

<u>Rowley</u> and in finding the school district's IEP to be "appropriate but inadequate"); <u>Zakary M.</u>

<u>by Donna M. v. Chester Cty. Intermediate Unit</u>, 1995 WL 739708 (E.D. Pa. Dec. 6, 1995) (not

precedential) (reversing Appeals Panel's partial denial of tuition reimbursement after determining delay in scheduling of due process hearing was not attributable to parents); Visco by Visco v. Sch. Dist. of Pittsburgh, 684 F. Supp. 1310, 1312 (W.D. Pa. April 28, 1988) (overturning the Hearing Officer's and Secretary's decisions as to the student's proper placements after determining that a change in the students' placement at the time would be harmful to their education progress). See also, M.M. v. New York Dep't of Educ., 26 F. Supp. 3d 249, 257 (S.D.N.Y. 2014) (rejecting conclusion of State Review Officer that student's educational performance was not adversely affected by her emotional problems, as "insufficiently reasoned to merit ... deference") (internal quotations and citation omitted); Long v. District of Columbia, 780 F. Supp.2d 49, 56-57 (D.D.C. 2011) (factual conclusion not supported by specific factual findings, and that was contradicted by the evidence, deserves little deference); School Bd. of City of Norfolk v. Brown, 769 F. Supp.2d 928, 945 (E.D. Va. 2010) (hearing officer and court not required to give deference to educator's testimony that an educational program is appropriate, i.e., whether it enables the child to achieve an educational benefit).

62.     The IDEA further expressly endows courts with broad authority to grant "such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(A); 34 C.F.R. § 300.516(c)(3). See Forest Grove School District v. T.A., 557 U.S. 230 (2009); Florence County School District Four v. Shannon Carter, 510 U.S. 7 (1993); Burlington School Committee v. Mass. Dept. of Educ., 471 U.S. 359 (1985).

63.     In reviewing a dispute brought under the IDEA's administrative hearing process, the district court must "independently review" the record plus any additional evidence presented

by the parties, 20 U.S.C. § 1415(i)(2)(C)(ii), and make its own determinations based on a preponderance of the evidence, while allowing "due weight" to the findings in the state administrative proceedings. Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206-07 (1982); Shore Regional High School Bd. of Educ. v. P.S., 381 F.3d 194, 198 (3d Cir. 2004); Susan N. v. Wilson School Dist., 70 F.3d 751, 759 (3d Cir. 1995) (court is required to independently review decision of hearing officer); Wexler v. Westfield Bd. Of Educ., 784 F.2d 176, 181 (3d Cir. 1986) (same); Delaware County Intermediate Unit v. Martin K., 831 F. Supp. 1206, 1220 (E.D. Pa. 1993). As the Third Circuit Court of Appeals has stated:

> [D]ue weight is owed to the administrative proceedings, not to the party who happened to prevail in those proceedings. Moreover, the amount of deference to be afforded the administrative proceedings "is an issue left to the discretion of the district court.... [T]he district court must consider the administrative findings of fact, ***but is free to accept or reject them***." Jefferson County Bd. of Educ. v. Breen, 853 F.2d 853, 857 (11th Cir. 1988).

Oberti by Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1219 (3d Cir. 1993) (emphasis added).

64.     The concept of "due weight" has been refined by the Third Circuit as requiring the District Court to conduct a "*modified de novo*" review of the decision of the administrative process below, according ***some deference*** to the previous fact-finding, and if the District Court departs from it, it must explain why; courts will defer to the hearing officer's credibility determinations unless countered by non-testimonial evidence. S.H. v. State-Operated School Dist., 336 F.3d 260, 269-270 (3d Cir. 2003). The S.H. case thus "encourages a thorough review of the evidence." Blount ex rel. Blount v. Lancaster-Lebanon Intermediate Unit, No. CIV.A. 03-579, 2003 WL 22988892, at *4 (E.D. Pa. Nov. 25, 2003) (Baylson, J.) (reversing hearing

officer). Of course, this Court exercises plenary review over the legal issues presented herein.

Warren G. v. Cumberland County School Dist., 190 F.3d 80, 83 (3d Cir. 1999); Susan N., 70

F.3d at 758. As the Honorable Berle M. Schiller has put it:

> Thus, the reviewing court should not adopt the traditional summary judgment standard of review. See Heather S. v. State of Wis., 125 F.3d 1045, 1052 (7th Cir. 1997).

> Instead, reviewing courts should apply a "modified" de novo standard of review. See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982). In doing so, courts must form their own opinions of the record, evaluating each element of the hearing officer's ruling. See Cypress–Fairbanks Indep. Sch. Dist. v. Michael F., 118 F.3d 245, 252 (5th Cir. 1997). District courts have discretion to determine how much deference to accord to the administrative proceeding. See Oberti v. Bd. of Educ., 995 F.2d 1204, 1219 (3d Cir. 1993).

Bucks Cty. Dep't of Mental Health/Mental Retardation v. De Mora, 227 F. Supp. 2d 426, 428

(E.D. Pa. 2002). See Andrew M. v. Delaware Co. Office of Mental Health and Mental

Retardation, 2005 WL 783070 (E.D. Pa. 2005) (Hart, M.J.) (overturning hearing officer based on

record as a whole).

65.     In sum, "[j]udicial review in IDEA cases differs substantially from judicial review

of other agency actions, in which courts are generally confined to the administrative record and

are held to a highly deferential standard of review." M.C. v. Antelope Valley Union High Sch.

Dist., 858 F.3d 1189, 1194 (9th Cir. 2017) (quoting Ojai Unified Sch. Dist. v. Jackson, 4 F.3d

1467, 1471 (9th Cir. 1993)) (internal quotation marks omitted). To determine whether an ALJ has

been sufficiently "thorough and careful" in an IDEA case, it is not enough to focus on the

"duration of the hearing, nor the ALJ's active involvement, nor the length of the ALJ's opinion."

Id. Rather, a district court judge "must actually examine the record to determine whether it

supports the ALJ's opinion." M.C. at 1194 n.1. Accord, Susan N.; Scott P.

<u>Pennsylvania Due Process Administrative Procedure Law</u>

66.     In Pennsylvania, due process hearings are conducted through the Office of

Dispute Resolution (ODR), which is "the agency designated by the Pennsylvania Department of

Education to provide administrative hearings for special education cases." <u>Breanne C. v. S. York</u>

<u>Cty. Sch. Dist.</u>, 732 F. Supp. 2d 474, 481 (M.D. Pa. 2010).  The process due in such a state

administrative or quasi-judicial proceedings is flexible.  <u>A.S. v. William Penn School Dist.</u>, 2014

WL 1394964, *5-6 (E.D.Pa. 2014) (Robreno, J.) (approving <u>ex parte</u> due process hearing).  As

relevant here:

> Neither the Federal Rules of Evidence nor the Pennsylvania Rules of Evidence
> strictly apply at [a] due process hearing...
>
> The enacting Pennsylvania regulation says that "[a]lthough technical rules of
> evidence will not be followed, the decision shall be based solely upon the
> substantial evidence presented at the hearing." 22 Pa.Code. § 14.162(f).
> Pennsylvania has created a Special Education Dispute Resolution Manual, which
> references some evidentiary issues, but does not provide the substantive rules of
> evidence that govern the hearing. <u>See</u> Pa. Special Educ. Dispute Resolution
> Manual, Office for Dispute Resolution (2009 Ed.), available at http://odr-
> pa.org/wordpress/wp-content /uploads/SEDR-man.pdf.

<u>Council Rock Sch. Dist. v. M.W. ex rel. Marc W.</u>, No. CIV.A. 11-4824, 2012 WL 3055686, at

*6 (E.D. Pa. July 26, 2012) (McLaughlin, J.).  <u>Accord</u>, <u>J.N. v. S. W. Sch. Dist.</u>, 55 F. Supp. 3d

589, 596 n.5 (M.D. Pa. 2014) (quoting <u>M.W.</u>); ODR Dispute Resolution Manual (2017 ed.) at §

605.  <u>See</u> 1 Pa. Code § 35.161 ("In a proceeding before the agency head or a presiding officer,

relevant and material evidence shall be admissible, but there shall be excluded evidence that is

repetitious or cumulative, or evidence that is not of the kind which would affect reasonable and

fair-minded men in the conduct of their daily affairs.")

67.     Regarding such state-level administrative hearings, the Commonwealth Court of

27

Pennsylvania has long held that a fact-finder should afford "hearsay evidence admitted without objection its natural probative effect so long as it is corroborated by competent evidence of record." Pennsylvania Game Commission v. State Civil Service Commission (Wheeland), 219 A.3d 1257, 1266 (Pa. Cmwlth. 2019).  In Pennsylvania, this is known as the "Walker" rule, after Walker v. Unemployment Compensation Bd. of Review, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). Federal courts have recognized the application of this rule in Pennsylvania administrative proceedings.  See Bailey v. Haley, 2012 WL 987496, *3 (E.D. Pa. 2012) (Tucker, J.), aff'd, 459 Fed.Appx. 152 (3d Cir. 2012) (termination of Section 8 subsidized federal housing benefits). Further, "the Walker rule applies 'in a variety of other agency proceedings' where an agency's own regulations are silent on hearsay rules." City of Phila. v. Civil Serv. Comm'n, 879 A.2d 146, 153-54 (Pa. 2005).  See K.D. v. Midd-West School Dist., 2009 WL 9097069, *2 (Pa. Cmwlth. 2009) (affirming Court of Common Pleas' application of Walker rule to school board expelling student based on hearsay about smoking marijuana); M.S. v. Midd-West School Dist., 2008 WL 9397240 (Pa. Cmwlth. 2008) (same).

## VI.    THE HEARING OFFICER'S ERRORS

### IDEA

68.    Pursuant to the above standards, the District unquestionably failed in its statutory duties to offer an appropriate IEP to Anthony.  The Hearing Officer correctly so found, finding under the applicable Burlington-Carter analysis that the Family had demonstrated that the District had denied Anthony FAPE, and that the equities did not weigh against reducing the amount of tuition owed by the District.  Decision at 19-20, 22.

69.    As the evidence showed, in light of Anthony's continuing and increasing

28

struggles and the School District's failure to offer an appropriate program for him, his Parents had no reasonable choice but to enroll Anthony at AIM at the start of the 2016-2017 school year -- and to continue his enrollment for the 2017-2018, 2018-2019, and 2019-2020 school years. Before re-enrolling Anthony, each time, the Parents provided timely notice to the School District of their decision to continue his enrollment at AIM because of the District's inappropriate program offer.

70.     The evidence at the Due Process hearing also demonstrated that, contrary to the programming provided by the School District, AIM provides Anthony with the appropriate, small, structured, and supportive educational environment that he requires and that Dr. Reisboard recommended in both his reports. AIM is a college-preparatory school for students in grades one through 12 with language-based learning differences located in Conshohocken, PA. The academic programming at AIM is individualized, evidence-based, and innovative, and it assists students in developing deep understanding and critical thinking skills. It is an appropriate placement for Anthony.  Exhibits P-5 (2016 report), P-10 (2019 report), P-15 (detailed AIM progress reports, which go far beyond a normal report card).

71.     AIM students are immersed in a highly interactive, language-enriched learning environment, blending hands-on, arts-based, and 21st century research and Wilson Reading teaching methods. AIM teachers draw from an array of proven technologies to help each of their students thrive. The depth and breadth of AIM's academic instruction, and the support services that are fully integrated within its program, provide Anthony with the additional supports and services he needs, as identified in Dr. Reisboard's reports. As a result, Anthony is flourishing at AIM, rebuilding his self-image and self-confidence, and making the academic strides he should

have been making all along in the School District. N.T. 173-182.

72.    However, the Hearing Officer wrongly found that the Family had not carried its burden to demonstrate that the placement at AIM was appropriate, based on several errors: (1) his fundamentally mistaken application of Pennsylvania administrative hearing evidence law, (2) his newly fabricated burden on the Family to present a live witness from AIM and an evaluator who was certified in school psychology, and (3) his factual error that the evaluator had no experience in educational psychology or special education, which is contrary to the record. Decision at 21-22.

73.    In considering the issue of whether AIM is an appropriate placement, the Hearing Officer failed to afford any proper weight to Dr. Reisboard's 2019 report, despite his extensive background, his visit to AIM and his classroom observation there, in which he found it an appropriate placement (Exhibit P-10, N.T. 173, 177, 181), Dr. Reisboard's testimony that it is an appropriate placement (N.T. 178-182), and, as he also discussed in his testimony, the significant differences between Anthony's 2016 (Exhibit P-5) and 2019 (P-10) evaluations. Decision at 21-22. The Hearing Officer also apparently failed to accord the testimony of Maria B. about AIM's appropriateness (N.T. 79-84), or the documentary evidence of Anthony's progress at AIM (P-15), any weight.

74.    The Hearing Officer alluded to the fact that Dr. Reisboard visited the school and spoke with teachers and administrators there, but the Hearing Officer discounted that as evidence of appropriateness because he found that "what was related about the programming is hearsay – the evaluator has no firsthand knowledge of the school's programming generally, or the student's programming specifically." Decision at 21-22.

75.     Not only is this finding contradicted by evidence of record – that Dr. Reisboard's second evaluation in 2019, P-10, included his own personal classroom observation, and he testified about ***both*** the school's programming generally and Anthony's AIM program specifically – but it is also contrary to the settled administrative procedure law discussed above. Under the Walker rule, any hearsay from Dr. Reisboard should have been given its natural probative effect, especially because there was no objection lodged regarding hearsay, and since any so-called hearsay was fully and extensively corroborated by other competent evidence of record, including not just the two evaluations (P-5 and P-10), but also the highly detailed records from AIM (P-15), and the testimony of Anthony's mother, Maria B., that AIM's programming is appropriate for him.  N.T. 79-84.

76.     In what the Hearing Officer found "a critical factor" that caused him to accord "very little weight" to Dr. Reisboard's testimony (which he also summarized as "no evidence", Decision at 21), the Hearing Officer appears to have made an astonishing factual error, ignoring record evidence, when he found that Dr. Reisboard "has no experience in school psychology, or in education let alone special education."  Decision at 22.  The testimony directly contradicts this statement. Dr. Reisboard specifically testified that he has a Bachelor's Degree and Ph.D. in psychology, and a Master's Degree in Special Education, and taught in the Philadelphia public schools.  He received a dual appointment in educational psychology and psychology at Temple University and, for ten years, ran the Temple Reading Clinic, in which he supervised the psychoeducational evaluation of thousands of children with learning disabilities, primarily in reading, which evaluations were to be used in schools.  Further, a full 39 years ago, he opened and has since run Main Line Psychological and Educational Associates in Ardmore -- through

which, among other things, he performs psychoeducational evaluations for school students, often involving learning disabilities, which evaluations are often utilized as the bases for IEPs and 504 plans. N.T. 139-142.

77.     It seems, however, more likely that, by his statement that the evaluator had "no experience in school psychology," the Hearing Officer was obliquely referring to the fact that Dr. Reisboard is not a certified school psychologist – a fact that was acknowledged on the record. N.T. 188-189.  That, however, is not, and never has been, a requirement for those performing special education psychological evaluations – until Anthony's case, apparently.

78.     The Hearing Officer stated that he was "surprised" he was not going to hear testimony from an employee of AIM Academy – but that he would not tell counsel for the Family how to establish his case. N.T. 132-33.  Counsel for the Family had earlier explained that, as a matter of policy, AIM does not provide witnesses for hearings due to the cost and loss of staff to teach children, and that the Family would therefore establish the appropriateness of the program through other competent evidence. N.T. 128.

79.     The Hearing Officer's Decision subsequently found the evidence insufficient that AIM was an appropriate placement because there was "no reliable evidence of the programming" and "no evidence to show how the private placement addresses the student's needs" – that there was "a failure of evidence." Decision at 21.

80.     Clearly, then, the Hearing Officer created a new standard that an employee from AIM testify, and since there was no AIM witness, incredibly found that "[t]here is no evidence" on whether AIM is appropriate.  Decision at 22.

81.     A parent's duty to establish the appropriateness of the private school at issue is

not a heavy one, and considerable leeway is given to the parent's choice of private school.  More

specifically:

> A parent's decision to unilaterally place a child in a private placement is proper if
> the placement "is appropriate, i.e., it provides significant learning and confers
> meaningful benefit...." DeFlaminis, 480 F.3d at 276 (internal quotation marks and
> citation omitted). That said, the "parents of a disabled student need not seek out the
> perfect private placement in order to satisfy IDEA." Ridgewood Bd. of Educ. v.
> N.E., 172 F.3d 238, 249 n.8 (3d Cir. 1999). In fact, the Supreme Court has ruled
> that a private school placement may be proper and confer meaningful benefit
> despite the private school's failure to provide an IEP or meet state educational
> standards. Florence County Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 14-
> 15 (1993).

Mary Courtney T.  v. School District of Philadelphia, 575 F.3d 235, 242 (3d Cir. 2009).

82.     Pursuant to these standards, the evidence established *without contradiction* that

AIM is proper, confers meaningful benefit, and, as a school specifically geared toward students

with language-based learning disabilities such as his, is clearly an appropriate placement for

Anthony.

83.     A Hearing Officer may only reduce or deny tuition reimbursement in one of three

circumstances: (1) where the parent failed to provide the District with written notice of their intent

to withdraw their child from the public schools and seek reimbursement for private placement; (2)

where the public school expressed its intent to evaluate the student at the time of withdrawal

(through the issuance of a Permission to Evaluate) and the parent failed to cooperate in the

evaluation; and (3) where the parent acted unreasonably.  34 C.F.R. § 300.148(d).  In the present

case, the parent provided the required notice, and acted reasonably at all times, and there is no

equitable basis to reduce or deny tuition reimbursement, as the Hearing Officer correctly found.

Decision at 22.

84.     The IDEA provides that an aggrieved party has the right to bring a civil action in

federal district court, which conducts an independent review of the administrative record and any additional evidence presented by the parties. <u>Shore Regional High School Bd. of Educ. v. P.S.</u>, 381 F.3d 194, 198 (3d Cir. 2004), <u>Susan N. v. Wilson School Dist.</u>, 70 F.3d 751, 756-757 (3d Cir. 1995); <u>Delaware County Intermediate Unit v. Martin K.</u>, 831 F. Supp. 1206, 1220 (E.D. Pa. 1993). <u>See</u> <u>also</u> 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516(c)(3).

85.     The Hearing Officer thus erred in denying tuition reimbursement to Anthony.  This Court should, applying the modified <u>de</u> <u>novo</u> standard of review explained above, find that the evidence of the appropriateness of AIM is clear on the record, find that second prong of the <u>Burlington</u>-<u>Carter</u> test met, and award tuition reimbursement in full, as requested.

### Section 504 of the Rehabilitation Act

86.     Because the District violated IDEA by failing to provide Anthony a FAPE, it also violated Section 504, and the Hearing Officer erred in not so ruling.

87.     Under Section 504, recipients of federal funds such as the District are required to "provide a free appropriate public education [FAPE] to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a).  The term "appropriate education" is defined as "the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of the handicapped persons as adequately as the needs of non-handicapped persons are met and (ii) are based on adherence to the procedures that satisfy the requirements of Section 104.34, 104.35, and 104.36." 34 C.F.R. § 104.33(b).

88.     Section 504 prohibits the exclusion of, or discrimination against, handicapped persons in federally funded programs such as public education.  Section 504 and its regulations

require the identification of all disabled children and the provision of appropriate educational services.  29 U.S.C. § 794; 34 C.F.R. § 104.1 et seq. Failure to provide accommodations, supplemental services and FAPE constitutes unlawful discrimination for purposes of Section 504.

89.     Under Section 504, a "handicapped person" is defined as "any person who has a physical or mental impairment which substantially limits one or more major life activities."  34 C.F.R. § 104.3.  The term "physical or mental impairment" is defined as "any physical or psychological disorder such as . . . emotional or mental illness and specific learning disabilities" Id.  The term "major life activities" is defined as "functions such as caring for one's self ... learning, and working."  Id.

90.     Section 504 provides specific requirements for public school systems to protect all handicapped students, even those who may not qualify under the categorical listings of IDEA. Section 504, like IDEA, imposes a child-find requirement that "a public elementary or secondary education program shall annually undertake to identify and locate every qualified handicapped person residing in the recipient's jurisdiction who is not receiving a public education and take appropriate steps to notify handicapped persons and their parents or guardians of the recipient's duty under this subpart." 34 C.F.R. § 104.32;  Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 253 (3d Cir. 1999); W.B. Matula, 67 F.3d 484, 492 (3d Cir 1995), abrogated on other grounds, A.W. v. Jersey City Public Schools, 486 F. 3d 791 (3d Cir. 2007).  The District must identify all children who are suspected of having a disability, and must also ensure that its evaluations to determine actual eligibility for services occur within a reasonable time after school officials are notified of a child who is likely to have a disability.  Id. at 501.

91.     "When a state fails to provide a disabled child with a free and appropriate education,

it violates the IDEA.  However, it also violates [Section 504] because it is denying a disabled child a guaranteed education merely because of the child's disability.  It is the denial of an education that is guaranteed to all children that forms the basis of the claim." <u>Andrew M. v. Delaware Cty. Office of Mental Health and Mental Retardation</u>, 490 F.3d 337, 350 (3d Cir. 2007).

92.     Thus, the substantive requirements of Section 504 in the education context are largely, but not entirely, equivalent to the requirements under the IDEA. <u>James S. v. School Dist. of Phila.</u>, 559 F. Supp.2d 600, 620 (E.D. Pa. 2008) (citing <u>Molly L. v. Lower Merion School Dist.</u>, 194 F. Supp.2d 422, 426 (E.D. Pa. 2002)). Section 504 "is broader in scope [than [IDEA].... The definition of 'individual with a disability' under § 504 of the Rehabilitation Act is broader in certain respects than the definition of a 'child with [a] disabilit[y]' under the IDEA." <u>Muller v. Commission on Special Educ. of E. Islip Union Free School Dist.</u>, 145 F.3d 95, 100 n.2 (2d Cir. 1998).  A school may violate Section 504 independent of any violations of IDEA.  <u>Lauren G. v. West Chester Area School Dist.</u>, 906 F.Supp.2d 375 (E.D. Pa. 2012) (granting tuition reimbursement for school district's failure to provide FAPE under Section 504 during period of time for which no relief was granted under IDEA).

93.     In order to establish a violation of Section 504, a plaintiff must prove that: (1) he is "disabled" as defined by the Act; (2) he is "otherwise qualified" to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. <u>Ridgewood</u>,172 F.3d at 253; <u>Andrew M.</u>, 490 F.3d at 350.

94.     Anthony is a student who, at all times relevant to this Complaint, is and was disabled, and is and was otherwise qualified to participate in, and receive equal benefits from, the

Defendant's educational programs with appropriate instruction, accommodations and supplemental supports for purposes of Section 504.

95.     Tuition reimbursement is clearly an available remedy under Section 504, as well as under IDEA. Molly L., 194 F. Supp. 2d at 429 n.7 ("Tuition reimbursement has been awarded in cases arising under both the Rehabilitation Act and IDEA."); Kevin M. v. Bristol Twp. School Dist., 2002 WL 73233, at *5 (E.D. Pa. Jan. 16, 2002) (because there are "few differences, if any," between requirements of IDEA and Section 504, "[t]he Court ... finds that plaintiff may pursue his tuition reimbursement claim against Bristol Township pursuant to Section 504 as well as IDEA."); Borough of Palmyra., Bd. Of Educ. v. F.C., 2 F. Supp. 2d 637, 641-42 (D.N.J. 1998) (rejecting argument that tuition reimbursement is not available form of relief under Section 504); Christen G. v. Lower Merion School Dist., 919 F. Supp. 793, 816, 821 (E.D. Pa. 1996) (reimbursement for costs of private school education was appropriate relief under both the IDEA and Section 504).

96.     Defendant's failure to offer Anthony a non-discriminatory, appropriate educational environment – indeed, any program at all – resulted in his being excluded from participation in, denied the benefits of, or subject to discrimination in, his education.  The evidence established, and the Hearing Officer found, that the District violated Section 504 by failing to evaluate Anthony and failing to provide or offer Anthony an appropriate program that meaningfully addressed his disabilities, all of which denied him a meaningful educational benefit.  The evidence also showed that AIM was an appropriate placement. The Hearing Officer therefore erred in not awarding tuition reimbursement under Section 504.

## Additional Relief

97.     Section 504 and IDEA permit recovery of reasonable attorneys' fees by parents

who prevail in an action or proceeding thereunder.   20 U.S.C. § 1415(i)(3)(B); 34 C.F.R. § 300.517; 29 U.S.C. § 794a; Andrew M. v. Delaware County Office of Mental Health/Mental Retardation, 2005 WL 783070 at *15 (E.D. Pa. 2005) (attorneys' fees are recoverable under Section 504); Daniel S. v. Scranton School Dist., 230 F.3d 90, 95 (3d Cir. 2000) (attorneys' fees are recoverable under IDEA).   Section 504 additionally permits more expansive costs, including expert witness fees.  M.M. v. School Dist. of Philadelphia, 142 F.Supp.3d 396, 413 (E.D. Pa. Nov. 3, 2015) ("Plaintiffs are entitled to recover expert fees under Section 504"); L.T. v. Mansfield Twp. School Dist., 2009 WL 248818139 at *2 (D.N.J. Aug. 11, 2009) ("plaintiffs are entitled to reimbursement of their expert fees for their prevailing party status on their Rehabilitation Act claim");

98.     Plaintiffs expect to be the prevailing parties at the conclusion of these proceedings, and therefore eligible for an award of reasonable attorneys' fees and costs, including expert costs.


WHEREFORE, the Plaintiffs respectfully request that this Court:

1.     Assume jurisdiction over this action;

2.     Hear additional evidence pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii);

3.     Reverse the Hearing Officer's Decision to the extent it finds that the Family is not entitled to tuition reimbursement and related costs for the three school years at issue;

4.     Order the District to pay tuition reimbursement and related costs for Anthony's 2017-2018, 2018-2019, and 2019-2020 school years;

5.     Order the Defendant to pay Plaintiffs their reasonable attorneys' fees and related costs;

6.    Declare the Defendant's actions and omissions to be violative of IDEA, Section 504, and Pennsylvania law; and

7.    Grant such other relief as this Court deems proper.

Respectfully submitted,

John W. Goldsborough, Esquire
ID No. 73063

Michael J.  Connolly, Esquire
ID No. 82065

Dennis C. McAndrews, Esquire
ID No. 28012

McANDREWS, MEHALICK, CONNOLLY,
HULSE & RYAN, P.C.
30 Cassatt Avenue
Berwyn, PA 19312
(610) 648-9300 (phone)
(610) 648-0433 (fax)

Attorneys for Plaintiffs